KENNEDY, JENNIK & MURRAY, P.C.
*Attorneys for Plaintiffs*
113 University Place, 7th Floor
New York, New York 10003
Tel. (212) 358-1500

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MAGDALENE WHEELER, RICHARD FIELDS, DONALD KEARNS, SR., JOYCE DULL, THOMAS LAWSON, and JEFFREY TAYLOR, on Their Own Behalf and on Behalf of All Other Similarly Situated Persons, and IUE-CWA, AFL-CIO, and LOCAL 82173, IUE-CWA, AFL-CIO, <br><br> Plaintiffs, <br><br> v. <br><br> EDGEWELL PERSONAL CARE, LLC, f/k/a Energizer Personal Care, LLC, formerly a Division of Energizer Holdings, Inc., as Plan Sponsor and Administrator of the Energizer Holdings, Inc. Group Life Insurance for Disabled and Retired Employees and the American Safety Razor Company Group Insurance Plan for Hourly Employees and as Parent to Playtex Products, LLC and as Successor to American Safety Razor Company, LLC, <br><br> Defendant. | Case No. _____ <br><br><br> **CLASS ACTION** <br> **COMPLAINT** |

Plaintiffs Magdalene Wheeler, Richard Fields, and Donald Kearns, Sr. ("NY Subclass Representatives"), and Joyce Dull, Thomas Lawson, and Jeffrey Taylor ("Virginia Subclass Representatives") (collectively, "Class Representatives"), on their own behalf and on behalf of all other similarly situated persons, and IUE-CWA, AFL-CIO ("IUE-CWA") and Local 82173, IUE-CWA, AFL-CIO ("Local 173"), for their Complaint against the Defendant, allege as follows:

## INTRODUCTION

1.    On December 31, 2013, Defendant Edgewell Personal Care, LLC ("Edgewell")[1],

---

[1] Edgewell Personal Care, LLC is the former Energizer Personal Care, LLC. Energizer Personal Care was a division of Energizer Holdings, Inc. In 2015, Energizer Holdings became Edgewell Personal Care, the Defendant here, spinning off the battery business into a company of

formerly a division of Energizer Holdings, Inc. ("Energizer"), terminated retiree life insurance

benefits that IUE-CWA had negotiated with: (a) Playtex Products, LLC, f/k/a Playtex Products,

Inc. ("Playtex"), a predecessor company to Edgewell, and (b) American Safety Razor Company,

LLC ("ASR"), which had been acquired by Energizer. Hundreds of retirees who had enjoyed

those benefits for decades were left without this coverage. One IUE-CWA retired participant in

the Playtex retiree life insurance plan, Walter Wheeler, died in February 2014, and his widow

has not been provided the life insurance benefit that Walter Wheeler bargained for as the

President of the IUE-CWA local union at Playtex.

2.      Plaintiffs bring this class action under Section 301 of the Labor Management

Labor Relations Act ("LMRA"), 29 U.S.C. § 185, for breach of collective bargaining

agreements, and under Sections 502(a)(1)(B), (a)(2), and (a)(3) of the Employee Retirement

Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), (a)(2), and (a)(3), to recover life

insurance benefits due and to clarify and enforce rights under a employee welfare benefit plan.

3.      Plaintiff IUE-CWA sues to enforce critical portions of its collective bargaining

agreements ("CBAs") with Edgewell and its predecessor companies, Playtex and ASR. These

CBAs provide life insurance to IUE-CWA-represented retirees and their dependents for their

lifetimes. The facilities that employed the IUE-CWA-represented Plaintiffs in this action are the

Playtex factory in Watervliet, New York (the "Watervliet Factory") and the ASR factory in

Verona, Virginia (the "Verona Factory"). Local 173, affiliated with IUE-CWA, also sues to

enforce a number of sequential CBAs at the Verona Factory, which also guarantee life insurance

---

its own. Playtex Products, LLC and American Safety Razor Company, LLC were acquired by
Energizer Holdings in 2007 and 2010, respectively. As a result of the 2015 split, Edgewell
became the parent company of Playtex Products and American Safety Razor. The actions
described as performed by "Edgewell" in this complaint refer to actions taken by Energizer
Holdings before the 2015 split.

for the life of retirees from that facility.

4.      Individual Plaintiffs and Class Representatives Magdalene Wheeler, Richard

Fields, Donald Kearns, Sr., Joyce Dull, Thomas Lawson, and Jeffrey Taylor sue to enforce their

rights under ERISA—as IUE-CWA-represented retirees or their dependents—to participate in

lifetime life insurance plans sponsored and administered by one or more of the Defendants

based upon their employment at the Watervliet Factory and the Verona Factory.

## JURISDICTION

5.      Jurisdiction of this Court is invoked under 28 U.S.C. § 1331, 29 U.S.C. § 185 and

29 U.S.C. § 1132(a), (e)(1) and (f). This action arises under ERISA, Sections 502(a)(1)(B),

(a)(2), and (a)(3), 29 U.S.C. § 1132(a)(1)(B), (a)(2), and (a)(3), and LMRA Section 301, 29

U.S.C. § 185.

## PRIOR PROCEEDINGS

6.      On June 18, 2014, Plaintiffs filed a complaint in the Southern District of Ohio

against Energizer that challenged the decision by Energizer to eliminate or threaten to eliminate

the life insurance or retiree health benefits for the Watervliet, New York Plaintiffs and the

Verona, Virginia Plaintiffs, as well as IUE-CWA members employed by Edgewell subsidiaries

in Ohio. The allegations in that case—*Dunn v. Edgewell Personal Care, LLC.*, Case No. 3:14-cv-

00195[2]—which concerned the Watervliet and Verona Factories were dismissed without

prejudice on September 9, 2015 due to improper venue in the Southern District of Ohio. (*Dunn v.*

*Edgewell*, Dkt. No. 28, pp. 17-18.)

7.      After the dismissal of the claims arising from the Watervliet Factory and the

---

[2] The Ohio case was originally filed as *Dull, et al. v. Energizer Personal Care, LLC, et
al.* On April 7, 2017, a second amended complaint was filed in that case, in accordance with a
settlement agreement. Corrections were made to the case caption, including naming only the
Ohio plaintiffs and updating the name of the Defendant to reflect the 2015 split of the companies
described in footnote 1.

Verona Factory, the parties entered into a settlement of the claims made on behalf of the Ohio

Plaintiffs. It is anticipated that the parties will enter into a substantially similar settlement of the

claims that are being made in this litigation on behalf of the New York and Virginia Plaintiffs,

which will be subject to the approval of this Court. It will conserve the resources of the parties

and of the Courts to resolve the claims of the New York and Virginia plaintiffs in a single

proceeding in the Southern District of New York where venue lies against Edgewell.

## VENUE

8.      Venue in this Court is proper under 28 U.S.C. § 1391(c)(2), 29 U.S.C. § 1132(e),

and 29 U.S.C. § 185(c).  Edgewell Personal Care, LLC registered with the New York Secretary

of State on July 31, 2015 as a foreign corporation doing business in New York. The company

had also registered with the New York Secretary of State as Energizer Personal Care, LLC on

October 15, 2008. Edgewell appointed an agent for service of process that is located at 111

Eighth Avenue, New York, New York 10011. In addition, the shares of Edgewell Personal Care,

LLC are traded on the New York Stock Exchange and, on information and belief, Edgewell sells

millions of dollars of personal care products in this District each year under brand names such as

Schick, Playtex, Stayfree, and Wet Ones.

## PARTIES

9.      Plaintiff Magdalene Wheeler's late husband, Walter Wheeler, Plaintiff Richard

Fields, and Plaintiff Donald Kearns, Sr. were employed by Playtex at the Watervliet Factory;

were "employees" as that term is defined under Section 2(5) of LMRA, 29 U.S.C. § 152(5), and

Section 3(6) of ERISA, 29 U.S.C. § 1002(6); were "members" of a labor organization, Local

20468 of Brush Workers Union, IUE-CWA, AFL-CIO and IUE-CWA, as defined under Section

3(o) of the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 402(o); and are

"participants" in Playtex's retiree life insurance plan, Energizer Holdings, Inc. Group Life Insurance for Disabled and Retired Employees ("Playtex Retiree Plan"), as that term is defined under Section 3(7) of ERISA, 29 U.S.C. § 1002(7). Plaintiff Wheeler is the "beneficiary" of her late husband's life insurance benefits in the Playtex Retiree Plan, as defined under Section 3(8) of ERISA, 29 U.S.C. § 1002(8). Plaintiffs Wheeler, Fields and Kearns bring this action on behalf of themselves and other participants and beneficiaries of the Playtex Retiree Plan.

10.     Plaintiff Wheeler resides at 11 California Avenue, Sherwood Park, Rensselaer, New York 12144-4901. Wheeler's late husband, Walter Wheeler, was President of former Local 468. Wheeler's husband retired from his employment with Playtex at the Watervliet Factory upon the factory's closure in or about December 2002. Wheeler is a beneficiary of her husband's life insurance benefits as a participant in the Playtex Retiree Plan.  Her husband passed away on February 10, 2014.

11.     Plaintiff Fields resides at 28 Dingman Road, Sand Lake, New York 12153.  Fields was former President of Local 468 during the 1980s and retired from his employment with Playtex at the Watervliet Factory in 1995. Fields became a participant in the Playtex Retiree Plan upon his retirement.

12.     Plaintiff Kearns resides at 48 Brookview Avenue, Troy, New York 12180. Kearns retired from his employment with Playtex at the Watervliet Factory in November 1995. Kearns became a participant in the Playtex Retiree Plan upon his retirement.

13.     Plaintiff Joyce Dull's late husband and deceased plaintiff, Harry Dull, Plaintiff Thomas Lawson, and Plaintiff Jeffrey Taylor were employed by ASR at the Verona Factory; were "employees," as that term is defined under Section 2(5) of LMRA, 29 U.S.C. § 152(5), and Section 3(6), 29 U.S.C. § 1002(6) of ERISA; were "members" of a labor organization—Local

173 and IUE-CWA—as defined under Section 3(o) of the Labor Management Reporting and Disclosure Act, 29 U.S.C. § 402(o); and are retired "participants" in the American Safety Razor Company Group Insurance Plan For Hourly Employees (the "ASR Retiree Plan"), as that term is defined under Section 3(7) of ERISA, 29 U.S.C. § 1002(7). Plaintiffs Dull, Lawson, and Taylor bring this action on behalf of themselves and other participants and beneficiaries of the ASR Retiree Plan within the meaning of Section 3(7) of ERISA, 29 U.S.C. § 1002(7).

14.   Plaintiff Dull resides at 115 South Lynnhaven Drive, Staunton, Virginia 24401. Dull's late husband, Harry Dull, became a member of Local 173 in 1962 and served as its President and Vice President during separate terms. On January 1, 1999, Harry Dull retired early from his employment with ASR at the Verona Factory. Harry Dull continued to be a participant in the ASR Retiree Plan after his retirement until his death on September 10, 2014. Joyce Dull, Harry's spouse, is the beneficiary of his life insurance benefit from Edgewell.

15.   Plaintiff Lawson resides at 151 Steeles Lane, Raphine, Virginia 24472 and is a member of Local 173. On February 1, 2001, Lawson retired early from his employment with ASR at the Verona Factory pursuant to its 2000 Voluntary Early Retirement Program ("ASR 2000 VERP"). He continued to be a participant in the ASR Retiree Plan after his retirement.

16.   Plaintiff Taylor resides at 9 Russel Rock Lane, Greenville, Virginia 24440. He became a member of Local 173 in May 1982 and served as its President from in or about 1994 to in or about 2006. Taylor retired early from his employment with ASR at the Verona Factory under its 2006 Voluntary Early Retirement Plan ("ASR 2006 VERP") in or about December 2006. He continued to be a participant in the ASR Retiree Plan after his retirement.

17.   IUE-CWA is a "labor organization" as that term is defined under Section 2(5) of the LMRA, 29 U.S.C. § 152(5), and Section 3(4) of ERISA, 29 U.S.C. § 1002(4), with an office

located at 2701 Dryden Road, Dayton, Ohio 45439 and at 20 Prospect Place, Ballston Spa, New York 12020. The IUE-CWA is, or was, a party to CBAs that provided lifetime retiree life insurance for IUE-CWA-represented retirees from the Watervliet and Verona Factories.

18.     Local 173 is a labor organization as that term is defined under Section 2(5) of the LMRA, 29 U.S.C. § 152(5), and Section 3(4) of ERISA, 29 U.S.C. § 1002(4). Local 173 is also party to the 2012-2017 Energizer CBA with Energizer Personal Care, LLC.

19.     Defendant Edgewell is a publicly held corporation incorporated under the laws of Missouri with its principal place of business located at 1350 Timberlake Manor Parkway, St. Louis, Missouri 63017. Edgewell operates globally in the manufacturing of personal care and household products. Edgewell is the "plan administrator," "plan sponsor," and "fiduciary" of the Playtex Retiree Plan, as these terms are defined under § 3(16)(A)(i), (16)(B)(i), and (21)(A) of ERISA, 29 U.S.C. § 1002(16)(A)(i), (16)(B)(i), and (21)(A), respectively. In or about 2007, Edgewell—then Energizer—purchased Playtex and assumed all of its contractual obligations to Local 468 and IUE-CWA. Upon information and belief, Edgewell operates Playtex as a subsidiary, Playtex Products, LLC.

20.     The Playtex Retiree Plan is an "employee welfare benefit plan" under § 3(1) of ERISA, 29 U.S.C. § 1002(1), providing life insurance benefits to the plan participants and their beneficiaries. The Plan is administered by Edgewell. Upon information and belief, the Playtex Retiree Plan is administered at 1350 Timberlake Manor Parkway, St. Louis, Missouri 63017.

21.     Playtex is a corporation incorporated under the laws of Delaware with a principal place of business located at 5901 West Side Avenue, Suite 400, North Bergen, New Jersey 07047. Playtex became a subsidiary of Energizer after Energizer purchased Playtex in or about 2007. Before Energizer's purchase of Playtex, Playtex, d/b/a Tek Hughes, and Playtex

Watervliet operated the Watervliet Factory in Watervliet, New York, which closed in 2002. Playtex is an "employer" as defined under Section 2(2) of the LMRA, 29 U.S.C. § 152(2), and Section 3(5) of ERISA, 29 U.S.C. § 1002(5), and is a sponsor of the Playtex Retiree Plan.

22.     ASR is a maker of shaving, industrial, and medical blades, as well as other shaving products, incorporated under the laws of Virginia, and at all times material to this litigation, maintained a principal place of business located at 1 Razor Blade Lane, Verona, Virginia 24482. ASR was purchased by Energizer in 2010. Edgewell retains all the contractual obligations of ASR as a result of the 2015 split that created Edgewell as a spin-off from Energizer.

## CLASS ACTION ALLEGATIONS

23.     The Class Representatives bring the class causes of action pursuant to Rules 23(a) and (b)(2) of the Federal Rules of Civil Procedure, on behalf of themselves and a class of persons (the "Class") who shall be defined as: all participants in the life insurance retiree plans sponsored by Energizer Personal Care, LLC, or its corporate affiliates and successors, covering retirees who, as of December 31, 2013: (i) had retired from active employment at Edgewell-affiliated facilities in New York and Virginia, (ii) were represented by the IUE-CWA, AFL-CIO, during their employment, and (iii) were entitled to continued life insurance benefits during their retirement under the collective bargaining agreements applicable to them when they retired from active employment.

24.     The class includes two subclasses: retirees from the Watervliet Factory (the "NY Subclass") and retirees from the Verona Factory (the "Virginia Subclass"), each defined as follows:

The NY Subclass

All participants in the life insurance retiree plan sponsored by Energizer Personal Care, LLC, or its corporate affiliates and successors, including Edgewell Personal Care, LLC, Energizer Holdings, Inc., and Playtex Products, LLC (f/k/a Playtex Products, Inc.), covering retirees from the Watervliet, New York factory as of December 31, 2013 who: (i) had retired from active employment at the Watervliet factory, (ii) were represented by the IUE-CWA, AFL-CIO during their employment at the Watervliet factory, and (iii) were entitled to continued life insurance benefits during their retirement under the collective bargaining agreement applicable to them when they retired from active employment at the Watervliet factory.

The Virginia Subclass

All participants in the life insurance retiree plan sponsored by Energizer Personal Care, LLC, or its corporate affiliates and successors, including Edgewell Personal Care, LLC, Energizer Holdings, Inc., and American Safety Razor Company, LLC, covering retirees from the Verona, Virginia factory as of December 31, 2013 who: (i) had retired from active employment at the Verona factory, (ii) were represented by the IUE-CWA, AFL-CIO during their employment at the Verona factory, and (iii) were entitled to continue life insurance benefits during their retirement under the collective bargaining agreement applicable to them when they retired from active employment at the Verona factory.

25.     The NY Subclass and the Virginia Subclass both meet the requirements of Rule 23(a), Fed. R. Civ. Pr., as follows:

(a) The subclasses are so numerous that joinder of all members is impracticable. Upon information and belief, the NY Subclass consists of more than 75 persons who worked at the Watervliet Factory. Upon information and belief, the Virginia Subclass consists of more than 250 persons who worked at the Verona Factory.

(b) There are common questions of law or fact for the subclasses that are critical to this litigation. Decisions on the continuation or termination of all of the retiree life insurance plans applicable to the NY and Virginia Subclasses were made by the same corporate official, Peter J. Conrad, Vice President, Human

Resources of then-Energizer Holdings, Inc. On July 26 and July 30, 2013, Energizer issued a bulletin labeled "Energizer & Me" to "U.S. Energizer Colleagues," including members of the subclasses from the Watervliet and Verona Factories, advising them there would be "changes to retiree benefits for 2014," including a statement that "Energizer's group retiree medical and dental plans, as well as retiree life insurance, will be discontinued as of December 31, 2013." The retired IUE-CWA members from the Watervliet and Verona Factories were deprived of their retiree life insurance on December 31, 2013 based on this notice without regard to any individual aspects of their employment or the CBAs in place at the time of their retirement.

(c) The questions common to the NY and Virginia Subclasses include, but are not limited to: whether their retiree life insurance benefits have vested under the applicable CBAs and the applicable plan, and whether Defendant (i) was obligated to continue to provide retiree life insurance coverage to the subclasses, (ii) unlawfully denied life insurance benefits for retirees upon terminating the benefits in violation of ERISA and its contractual obligations under the applicable CBAs, and (iii) violated its fiduciary duties under ERISA by terminating vested life insurance benefits under the applicable benefit plans.

(d) The claims of the Class Representatives are typical of the claims of the subclasses. Each of the Class Representatives is a participant or beneficiary of the Playtex Retiree Plan or the ASR Retiree Plan and is entitled to retiree life insurance benefits that were to continue for life, similar to all members of each subclass. All subclass members allege that Defendant: (i) is obligated

10

under the applicable collective bargaining agreements and the early retirement

agreements, ERISA, and the employee benefit plan to provide lifetime retiree

life insurance benefits without the right to unilaterally terminate the benefits,

(ii) unlawfully terminated, reduced or threatened to terminate the life

insurance benefits without notice, and (iii) violated the CBAs, the employee

benefit plan, and ERISA upon terminating, reducing, or threatening to

terminate, the life insurance benefits.

(e) The Class Representatives will fairly and adequately protect the interests of

each subclass. Each of the Class Representatives is a participant or beneficiary

in the Playtex Retiree Plan or the ASR Retiree Plan and is either a member or

former member of IUE-CWA or Local 173, or the beneficiary of a deceased

participant who was a member or former member of IUE-CWA or Local 173.

The Class Representatives have retained competent counsel experienced in

labor and employee benefits law and have acted and intend to act prudently

with respect to the interests of each subclass.

(f) Defendant acted on grounds generally applicable to each subclass, thereby

making final injunctive relief appropriate to the Class as a whole. The

systemic wrongs in the operation of the employee benefits plan identified by

the Class Representatives were committed against the Class generally and not

against Plaintiffs as individuals.

## FACTS RELEVANT TO ALL CAUSES OF ACTION

26.     The Class Representatives were promised lifetime retiree life insurance benefits

under the CBAs and/or various early retirement agreements.

11

27.     IUE-CWA and the pertinent locals were parties to the following collective bargaining agreements with Playtex and ASR:

|     | Playtex CBAs (Watervliet, NY Factory) | ASR CBAs (Verona, Virginia Factory) |
|-----|---------------------------------------|-------------------------------------|
| (a) | 1976-1979 Playtex CBA                 | 1985-1988 ASR CBA                   |
| (b) | 1979-1982 Playtex CBA                 | 1988-1991 ASR CBA                   |
| (c) | 1982-1985 Playtex CBA                 | 1991-1994 ASR CBA                   |
| (d) | 1985-1988 Playtex CBA                 | 1994-1997 ASR CBA                   |
| (e) | 1988-1991 Playtex CBA                 | 1997-2000 ASR CBA                   |
| (f) | 1991-1994 Playtex CBA                 | 2000-2003 ASR CBA                   |
| (g) | 1994-1997 Playtex CBA                 | 2003-2006 ASR CBA                   |
| (h) | 1997-2000 Playtex CBA                 | 2006-2012 Verona Agreement          |
| (i) | 2000-2003 Playtex CBA                 |                                     |

*The Playtex CBAs and the Watervliet Factory*

28.     The Playtex CBAs covered employees employed in Playtex's Watervliet Factory. Playtex manufactured feminine hygiene products at the Watervliet Factory until it was closed in or about December 2002.

29.     The Playtex CBAs contractually provided the following lifetime life insurance benefits to retirees:

(a) Article XV of the 1976-1979 Playtex CBA provided retirees with a lifetime life insurance benefit in the amount of $6,000 that was increased to $7,000 on June 25, 1978;

(b) Article XV of the 1985-1988 Playtex CBA provided retirees who retired prior to June 24, 1979 with a lifetime life insurance benefit amount that was in effect at the date of retirement, and retirees who retired on or after June 24, 1979 received a lifetime life insurance benefit amount of $7,000;

(c) Article XV of the 1988-1991 Playtex CBA provided retirees who retired prior to June 24, 1979 with a lifetime life insurance benefit amount that was in effect at the date of retirement, and retirees who retired on or after June 24, 1979 received a lifetime life insurance benefit amount of $7,000;

(d) Article XV of the 1991-1994 Playtex CBA provided retirees who retired prior to June 24, 1979 with a lifetime life insurance benefit amount that was in effect at the date of retirement; retirees who retired on or after June 24, 1979 received a lifetime life insurance benefit amount of $7,000, and retirees who retired on or after June 20, 1993 received a lifetime life insurance benefit amount of $7,500;

(e) Article XV of the 1994-1997 Playtex CBA provided retirees who retired prior to June 24, 1979 with a lifetime life insurance benefit amount that was in effect at the date of retirement, and retirees who retired on or after June 24, 1979 received a lifetime life insurance benefit amount of $7,000;

(f) Article XV of the 2000-2003 Playtex CBAs provided retirees who retired prior to June 28, 1997 with a lifetime life insurance benefit amount that was in effect at the date of their retirement, and retirees who retired on or after June 29, 1997 received a lifetime life insurance benefit amount of $8,000.

30.    Plaintiff Magdalene Wheeler's late husband, Walter Wheeler, retired in 2002. Walter Wheeler passed away on February 10, 2014, and Magdalene Wheeler was unable to obtain the life insurance benefits due to her because Energizer had cancelled her husband's retiree life insurance as of December 31, 2013.

31.    Plaintiff Fields retired from the Watervliet Factory in 1995. Fields is eligible for a retiree life insurance benefit in the amount of $7,500.

32.    Plaintiff Kearns retired from the Watervliet Factory in November 1995. Kearns is eligible for a retiree life insurance benefit in the amount of $7,500.

*Edgewell's Assumption of Responsibility for Retiree Plan at the Watervliet Facility*

33.    Upon its purchase of Playtex, Energizer assumed all of the obligations of Playtex's employee benefit plans, including, but not limited to, the Playtex Retiree Plan.

*Edgewell's Termination of Benefits to the Watervliet Retirees*

34.    By notices dated July 26, 2013 and July 30, 2013, Energizer informed its employees, including the NY Subclass Representatives for the Class, that Energizer's retiree welfare benefits, including life insurance benefits, would be terminated on December 31, 2013.

*The ASR CBAs and the Verona Factory*

35.     The ASR CBAs covered employees employed at the Verona Factory and contractually provided the following lifetime life insurance benefits to retirees:

> (a) Article 33(B)(19) of the 1985-1988 ASR CBA provides retirees with a lifetime life insurance benefit of $7,500, effective October 1, 1985;
>
> (b) Article 33(B)(19) of the 1988-1991 ASR CBA provides retirees with a lifetime life insurance benefit of $8,500, effective October 1, 1988;
>
> (c) Article 33(B)(4)(d) of the 1991-1994 ASR CBA provides retirees with a lifetime life insurance benefit of $8,500, effective October 1, 1988;
>
> (d) Article 33(B)(4)(d) of the 1994-1997 ASR CBA provides retirees with a lifetime life insurance benefit of $8,500, effective October 1, 1988;
>
> (e) Section 37.2.5.1.3 of the 2000-2003 ASR CBA provides retirees with a lifetime life insurance benefit of $8,500;
>
> (f) Section 37.9.5.13 of the 2003-2006 ASR CBA provides retirees with a lifetime life insurance benefit of $10,500;
>
> (g) Section 6.0 of the 2006-2012 Verona Agreement contractually obligates Energizer and its predecessor, ASR, to "continue to provide a $10,500 Life Insurance Policy for only those employees who are eligible and elect to retire under the Voluntary Early Retirement Program of $10,500."

36.     The ASR CBAs in effect between 1985 and 1997, at Article 33(D), included the following provision:

> It is distinctly understood and agreed that the Company's only obligation is to pay the cost of the group insurance as described, and in all matters with respect to coverage, payments, or benefits and the amount thereof, the negotiated benefits shall control and not the policy issued by the insurance carrier.

**The ASR Retiree Plan**

37.     Consistent with the terms of the ASR CBAs, the ASR Retiree Plan document provides the following lifetime life insurance benefit to retirees:

> (a) $2,375 to all retirees who retired prior to January 1, 1974;
>
> (b) $2,625 to all retirees who retired after January 1, 1974 and prior to January 1, 1976;

14

(c) $2,875 to all retirees who retired after January 1, 1976 and prior to January 1, 1979;

(d) $3,500 to all retirees who retired after October 1, 1979 and prior to October 1, 1982;

(e) $4,500 to all retirees who retired after October 1, 1982 and prior to October 1, 1985;

(f) $7,500 to all retirees who retired after October 1, 1985 and prior to October 1, 1988;

(g) $8,500 to all retirees who retired after October 1, 1988 and prior to September 28, 2003; and

(h) $10,500 to all retirees who retired on or after September 28, 2003.

### Voluntary Early Retirement Programs ("VERPs")

38.     In or about November 2000, ASR offered the 2000 ASR VERP from November 1, 2000 to December 15, 2000 to eligible hourly employees. Eligible employees were those employees age 55 or older as of April 1, 2001, with at least five years of service, or any age with at least 30 years of adjusted service, and a participant in the ASR Staunton Employee's Retirement Plan. Upon information and belief, about 100 employees were eligible to participate in the 2000 VERP as of October 31, 2000, and about 50 employees elected to participate.

39.     To induce employees off the payroll, the 2000 ASR VERP offered, in addition to other benefits, a life insurance benefit of $8,500 to individuals who elected to retire early. Specifically, the 2000 ASR VERP's Special Retirement Window Packet provided: "As a Special Retirement Window retiree, you are eligible for a $8,500 life insurance benefit, at no cost to you."

40.     In order to accept the 2000 ASR VERP, employees were required to complete an election form by December 15, 2000.

41.     Similar to the 2000 ASR VERP, the 2006-2012 Verona Agreement also provided a VERP in 2006, 2007, and 2008. ASR contractually agreed to provide employees with a VERP offer between the date of the agreement's ratification and December 31, 2008, pursuant to

15

Section 3.2 of the 2006-2012 Verona Agreement. All employees hired at the Verona Factory before September 26, 2000 were eligible to participate in a VERP.

42.     Specifically, under Section 3.5.4 of the 2006-2012 Verona Agreement, the first early retirement window was December 1, 2006 for employees hired during 1984 or before. Out of 213 employees who were eligible to participate in the 2006 ASR VERP, 208 employees elected to voluntarily separate from the payroll. Additional early retirement windows were provided in 2007 and 2008.

43.     Section 3.4 of the 2006-2012 Verona Agreement further provides: "Each eligible employee will be offered only one Voluntary Early Retirement Window. There will not be another (second) opportunity for an eligible employee to participate in the Voluntary Early Retirement Program once their individual window has closed."

44.     Section 3.3 of the 2006-2012 Verona Agreement stated: "Participation in the Early Retirement Program is voluntary—no employee will be forced to retire."

45.     Under Section 6.1 of the 2006-2012 Verona Agreement, ASR was contractually required to provide a $10,500 lifetime life insurance benefit to any employee who agreed to voluntarily separate from the payroll under the 2006, 2007, and 2008 ASR VERP.

46.     Plaintiff Dull's late husband, Harry Dull, Plaintiff Lawson, and Plaintiff Taylor were induced to retire early by promises that they would be eligible for lifetime life insurance benefits.

47.     On or about January 1, 1999, Plaintiff Dull's late husband, Harry Dull, retired early from his employment with ASR based on the promise that he would maintain a life insurance benefit under the ASR Retiree Plan in the amount of $8,500.

48.     On or about February 1, 2001, Plaintiff Lawson retired early from his

employment with ASR after he elected to participate in the 2000 ASR VERP based on the promise that he would maintain a life insurance benefit under the ASR Retiree Plan of $8,500.

49.     Plaintiff Taylor retired early from his employment with ASR after he elected to participate in a VERP based on the promise that he would maintain a life insurance benefit under the ASR Retiree Plan.

50.     Plaintiff Dull's late husband, Harry Dull, Plaintiff Lawson, and Plaintiff Taylor would not have retired but for ASR's promise of retiree benefits under the ASR CBAs, the ASR Retiree Plan, and the ASR VERPS.

*Edgewell's Assumption of Responsibility for Retiree Plan at the Verona Facility*

51.     Under Section 2.5.4 of the 2006-2012 Verona Agreement, ASR expressly agreed that "as a condition of the sale of the Verona operation as an ongoing business, [it] will require the buyer to assume the 2006 Collective Bargaining Agreement."

52.     On November 23, 2010, Energizer purchased ASR during ASR's Chapter 11 bankruptcy action, *In re American Safety Razor Company, LLC*, No. 10-1235 (Bankr. D. Del.). Pursuant to the Asset Purchase Agreement, Energizer assumed all of the contractual obligations under the ASR CBAs, including, but not limited to, the 2003-2006 ASR CBA, as revised and extended under the 2006-2012 Verona Agreement.

53.     Energizer assumed all of the obligations of the ASR employee benefit plans, including, but not limited to, the ASR Retiree Plan, pursuant to Section 1.3(a) of the Asset Purchase Agreement.

54.     Energizer, Local 173, and the IUE-CWA negotiated and executed the 2013-2017 Energizer CBA upon the expiration of the 2003-2006 ASR CBA that was revised and extended until September 29, 2012, pursuant to the 2006-2012 Verona Agreement.

*Edgewell's Termination of Benefits to the Verona Retirees*

55.     By notices dated July 26, 2013 and July 30, 2013, Energizer informed its

employees, including the Class representatives for the subclass, that Energizer's retiree welfare

benefits, including life insurance benefits, would be terminated on December 31, 2013.

## FIRST CAUSE OF ACTION
## ON BEHALF OF IUE-CWA

**LMRA Section 301**

56.     Each and every allegation of paragraphs 1 through 55 is incorporated by reference

into each of the causes of action set forth herein.

57.     Energizer and Playtex promised to provide lifetime retiree life insurance benefits

to the IUE-CWA Watervliet Factory retirees pursuant to the following CBAs:

> (a) 1976-1979 Playtex CBA
> (b) 1979-1982 Playtex CBA
> (c) 1982-1985 Playtex CBA
> (d) 1985-1988 Playtex CBA
> (e) 1988-1991 Playtex CBA
> (f) 1991-1994 Playtex CBA
> (g) 1994-1997 Playtex CBA
> (h) 1997-2000 Playtex CBA
> (i) 2000-2003 Playtex CBA

58.     Under each of the Playtex CBAs listed above, IUE-CWA Watervliet Factory

retirees have the right to receive from Defendant Edgewell and Playtex the life insurance benefits

at issue. Defendant's termination of these benefits interferes with the rights of the IUE-CWA

Watervliet Factory retirees to obtain these benefits and violates the agreements that contractually

obligate Defendant to provide the benefits to Class members.

59.     By the conduct described in the paragraphs above, including terminating lifetime

retiree life insurance benefits under the Playtex Retiree Plan, Defendant Edgewell has violated

collectively-bargained obligations to IUE-CWA Watervliet Factory retirees to provide lifetime

retiree life insurance benefits.

60.     Defendant Edgewell's conduct is actionable under Section 301 of the LMRA, 29

U.S.C. § 185(a).

## SECOND CAUSE OF ACTION
## ON BEHALF OF LOCAL 173 AND IUE-CWA

**LMRA Section 301**

61.     Each and every allegation of paragraphs 1 through 60 is incorporated by reference

into each of the causes of action set forth herein.

62.     Defendant Edgewell promised to provide lifetime retiree life insurance benefits to

the Verona Factory retirees pursuant to the following CBAs:

> (a) 1985-1988 ASR CBA
> (b) 1988-1991 ASR CBA
> (c) 1991-1994 ASR CBA
> (d) 1994-1997 ASR CBA
> (e) 1997-2000 ASR CBA
> (f) 2000-2003 ASR CBA
> (g) 2003-2006 ASR CBA
> (h) 2006-2012 Verona Agreement

63.     Under each one of the ASR CBAs listed above, IUE-CWA Verona Factory

retirees have the right to receive from Defendant the life insurance benefits at issue. Defendant's

termination of these life insurance benefits interferes with the rights of the IUE-CWA Verona

Factory retirees to obtain these benefits and violates the agreements that contractually obligate

Defendant to provide the benefits to those retirees.

64.     By the conduct described in the paragraphs above, including terminating lifetime

retiree life insurance benefits under the ASR Retiree Plan, Defendant has violated collectively-

bargained obligations to IUE-CWA Verona Factory retirees to provide lifetime retiree life

insurance benefits.

65.     Defendant's conduct is actionable under Section 301 of the LMRA, 29 U.S.C. §

185(a).

### THIRD CAUSE OF ACTION
### ON BEHALF OF THE NY SUBCLASS

**ERISA Action Under Sections 502(a)(1)(B) and 502(a)(2) for Violation of Employee Welfare Benefit Plan**

66.     Each and every allegation of paragraphs 1 through 65 is incorporated by reference into each of the causes of action set forth herein.

67.     By the conduct described in the paragraphs above, Defendant violated the rights of the IUE-CWA Watervliet Factory retirees under the Playtex Retiree Plan. The rights of IUE-CWA Watervliet Factory retirees are vested under the Playtex Retiree Plan and cannot be retroactively changed or terminated.

68.     Defendant's unilateral termination of life insurance benefits interferes with the IUE-CWA Watervliet Factory retirees' rights under the Playtex Retiree Plan, violates the terms of the Plan and the applicable CBAs, and constitutes a breach of the fiduciary duties Defendant owes to the subclass under ERISA.

69.     Defendant's termination and violation of the Playtex Retiree Plan violates ERISA and is actionable under ERISA Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), which permits a participant or beneficiary of a retiree life insurance plan to bring a civil action "to enforce his right under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan," and ERISA Section 502(a)(2), 29 U.S.C. § 1132(a)(2), which permits a participant or beneficiary to sue for breach of fiduciary duty.

### FOURTH CAUSE OF ACTION
### ON BEHALF OF THE VIRGINIA SUBCLASS

**ERISA Action Under Sections 502(a)(1)(B) and 502(a)(2) for Violation of Employee Welfare Benefit Plan**

70.     Each and every allegation of paragraphs 1 through 69 is incorporated by reference

into each of the causes of action set forth herein.

71.     By the conduct described in the paragraphs above, Defendant violated the rights of the IUE-CWA Verona Factory retirees under the ASR Retiree Plan. The rights of IUE-CWA Verona Factory retirees under the ASR Retiree Plan are vested and cannot be retroactively changed or terminated.

72.     Defendant's unilateral termination of life insurance benefits interferes with the IUE-CWA Verona Factory retirees' rights under the ASR Retiree Plan, violates the terms of the Plan and the applicable CBAs, and constitutes a breach of the fiduciary duties Defendant owes to the subclass under ERISA.

73.     Defendant's termination and violation of the ASR Retiree Plan violates ERISA and is actionable under ERISA Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), which permits a participant or beneficiary of a retiree life insurance plan to bring a civil action "to enforce his right under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan," and ERISA Section 502(a)(2), 29 U.S.C. § 1132(a)(2), which permits a participant or beneficiary to sue for breach of fiduciary duty.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray that this Court:

1.     Permanently enjoin Defendant from modifying or terminating the retiree life insurance that Defendant is obligated to provide Plaintiffs under the applicable collective bargaining agreements and employee welfare benefit plans and to reinstate those benefits already wrongfully modified or terminated;

2.     Declare that Defendant breached its fiduciary duties to the NY Subclass in violation of the applicable collective bargaining agreements and ERISA by unilaterally terminating benefits to the IUE-CWA-represented Watervliet Factory retirees;

3.      Declare that Defendant breached its fiduciary duties to the Virginia Subclass in violation of the applicable collective bargaining agreements and ERISA by unilaterally terminating benefits to the IUE-CWA-represented Verona Factory retirees;

4.      Award all Plaintiffs and Class Members retiree life insurance benefits pursuant to the terms of the applicable benefit plans and the applicable collective bargaining agreements, and further award such monetary relief and/or equitable relief as is necessary to restore Plaintiffs and Class Members to the positions in which they would have been but for Defendant's contractual and statutory violations and otherwise unlawful conduct;

5.      Award Plaintiffs their attorneys' fees, litigation expenses, and costs; and

6.      Grant Plaintiffs such other and further relief as is just and equitable.


Dated: May 19, 2017
         New York, New York


                              Respectfully submitted,

                              KENNEDY, JENNIK & MURRAY, P.C.
                              *Attorneys for Class Representatives and IUE-CWA*

                              By:   s/ Thomas M. Kennedy
                                     Thomas M. Kennedy
                                     Susan M. Jennik
                                     Serge Ambroise
                                     113 University Place, 7th FL
                                     New York, NY 10003
                                     Tel. (212) 358-1500
                                     Fax (212) 358-0207
                                     tkennedy@kjmlabor.com
                                     sjennik@kjmlabor.com
                                     sambroise@kjmlabor.com