COHEN, WEISS AND SIMON, L.L.P.
*Attorneys for Class Representatives and IUE-CWA*
900 Third Avenue, 21st Floor
New York, New York 10022
Tel. (212) 563-4100

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MAGDALENE WHEELER, RICHARD FIELDS, DONALD KEARNS, SR., JOYCE DULL, THOMAS LAWSON, and JEFFREY TAYLOR, on Their Own Behalf and on Behalf of All Other Similarly Situated Persons, and IUE-CWA, AFL-CIO, and LOCAL 82173, IUE-CWA, AFL-CIO, <br><br>                         Plaintiffs, <br><br>              v. <br><br> EDGEWELL PERSONAL CARE, LLC, f/k/a Energizer Personal Care, LLC, formerly a Division of Energizer Holdings, Inc., as Plan Sponsor and Administrator of the Energizer Holdings, Inc. Group Life Insurance for Disabled and Retired Employees and the American Safety Razor Company Group Insurance Plan for Hourly Employees and as Parent to Playtex Products, LLC and as Successor to American Safety Razor Company, LLC, <br><br>                     Defendants. | **Case No. 17-cv-03789 (GBD)** |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR APPLICATION**
**FOR ATTORNEYS' FEES AND COSTS**

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ............................................................................................. 1

STATEMENT OF FACTS ................................................................................................... 2

ARGUMENT ...................................................................................................................... 6

I.      PLAINTIFFS ARE ENTITLED TO THE AWARD OF ATTORNEYS' FEES
        AND COSTS IN THE AMOUNT OF $60,000 ................................................................ 6

        A.      The *Goldberger* Factors Support the Award of Fees ............................................ 7

                1.      Time and Labor Expended by Counsel.................................................... 7

                2.      Magnitude and Complexity of the Litigation.......................................... 8

                3.      The Risk of the Litigation. .................................................................... 8

                4.      The Quality of Representation. .............................................................. 9

                5.      The Requested Fee in Relation to the Settlement. ................................. 10

                6.      Public Policy Considerations. .............................................................. 10

        B.      The Hourly Rates Sought are Reasonable. ......................................................... 11

                1.      Partners Thomas M. Kennedy and Susan M. Jennik ............................. 12

                2.      Associates Serge Ambroise, Sumanth Bollepalli, and Cristina
                        Gallo.................................................................................................... 15

                3.      Paralegal Leah Thompson...................................................................... 16

        C.      The Hours of Legal Work Performed in this Matter are Reasonable. ................. 17

        D.      Plaintiffs Are Entitled to the Award of $768.11 in Costs. .................................. 17

CONCLUSION.................................................................................................................... 18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*,
   522 F.3d 182 (2d Cir. 2008)................................................................................ *passim*

*Asare v. Change Group New York, Inc.*,
   No. 12-CV-3371 (CM), 2013 WL 6144764 (S.D.N.Y. Nov. 15, 2013)..................................14

*Bldg. Serv. 32BJ Health Fund v. Hughes Contracting Indus. Ltd.*,
   No. 14-CV-09581 (SN), 2017 WL 2169302 (S.D.N.Y. May 17, 2017)...........................12, 17

*Demonchaux v. Unitedhealthcare Oxford*,
   No. 10-CV-4491 (DAB), 2014 WL 1273772 (S.D.N.Y. Mar. 27, 2014)......................... 12-13

*DeVito v. Hempstead China Shop, Inc.*,
   831 F. Supp. 1037 (E.D.N.Y. 1993) ....................................................................18

*Diplomatic Man, Inc. v. Nike, Inc.*,
   No. 08-CV-139 (GEL), 2009 WL 935674 (S.D.N.Y. Apr. 7, 2009)......................................16

*Doe v. Unum Life Ins. Co. of Am.*,
   No. 12-CV-9327 (LAK)(AJP), 2016 WL 335867 (S.D.N.Y. Jan. 28, 2016) ............. 13, 14-15

*In re Eastman Kodak Erisa Litig.*,
   213 F. Supp. 3d 503 (W.D.N.Y. 2016) .............................................................8, 10

*Farbotko v. Clinton Cty.*,
   433 F.3d 204 (2d Cir. 2005).............................................................................12

*In Re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................................9

*Goldberger v. Integrated Resources, Inc.*,
   209 F.3d 43 (2d Cir. 2000)............................................................................. 7-8

*Int'l Union, United Auto, Aerospace and Agricultural Workers of Am. v. Kelsey-Hayes Co.*,
   872 F.3d 388 (6th Cir. 2017) (Griffin, J., dissenting)............................................9

*IUE-CWA, et al. v. General Electric Company*,
   15-CV-2301 (BYP) (N.D. Ohio) ........................................................................6

*Johnson v. Georgia Highway Express, Inc.*,
    488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989) ................................................................................11

*King v. JCS Enterprises, Inc.*,
    325 F. Supp. 2d 162 (E.D.N.Y. 2004) ...................................................... 17-18

*In re Marsh ERISA Litig.*,
    265 F.R.D. 128 (S.D.N.Y. 2010) ............................................................... 9-10

*Massiah v. MetroPlus Health Plan, Inc.*,
    No. 11-CV-05669 BMC, 2012 WL 5874655 (E.D.N.Y. Nov. 20, 2012) .................................8

*Moore, et al. v. Navillus Tile, Inc., et al.*,
    No. 14-8326 (S.D.N.Y. 2017) ...............................................................................6

*Moore, et al. v. River Avenue Contracting Corp., et al.*,
    No. 13-CV-4205 (JSR)(AJP) (S.D.N.Y.). .............................................................6

*N.Y.C. Dist. Council of Carpenters Pension Fund v. Quantum Constr.*,
    No. 06-CV-13150 (GEL)(JCF), 2008 WL 5159777 (S.D.N.Y. Dec. 9, 2008) ........................15

*N.Y.C. Dist. Council of Carpenters v. Rock-It Contr., Inc.*,
    No. 09-CV-9479 (JGK)(AJP), 2010 WL 1140720 (S.D.N.Y. Mar. 26, 2010) ......................15

*New York State Ass'n for Retarded Children, Inc. v. Carey*,
    711 F.2d 1136 (2d Cir. 1983) .........................................................................17

*Powell v. Metro One Loss Prevention Servs. Grp. (Guard Div. NY)*,
    No. 12-CV-4221 (LAP)(DF), 2015 WL 9287121 (S.D.N.Y. Feb. 5, 2015) ........................14

*Raniere v. Citigroup Inc.*,
    310 F.R.D. 211 (S.D.N.Y. 2015) .................................................................7, 10

*Rozell v. Ross-Holst*,
    576 F. Supp. 2d 527 (S.D.N.Y. 2008) ..............................................................14

*Severstal Wheeling, Inc. v. WPN Corp.*,
    No. 10-CV-954 (LTS)(GWG), 2016 WL 1611501 (S.D.N.Y. Apr. 21, 2016) ............... 13-14

*Siddiky v. Union Square Hosp. Grp., LLC*,
    No. 15 CIV. 9705 (JCF), 2017 WL 2198158 (S.D.N.Y. May 17, 2017) ......................7-10

*Taft v. Ackermans*,
    No. 02 Civ. 7951, 2007 WL 414493 (S.D.N.Y. Jan. 31, 2007) ...............................9

*Themis Capital v. Democratic Republic of Congo*,
    No. 09-CV-1652 (PAE), 2016 WL 817440 (S.D.N.Y. Feb. 22, 2016) ......................15

*Therapy Prods., Inc. v. Bissoon*,
   No. 07-CV-8696 (DLC)(THK), 2010 WL 2404317 (S.D.N.Y. Mar. 31, 2010) .....................16

*Trustees of the New York City District Council of Carpenters Pension Fund v.*
   *Onyx Glass & Metal Corp.*,
   No. 14-CV-7333 (PAE), 2015 WL 5144120 (S.D.N.Y. Sep. 1, 2015) ...................................17

*U.S. Football League v. Nat'l Football League*,
   887 F.2d 408 (2d Cir. 1989)......................................................................................................16

**Statutes**

Employee Retirement Income Security Act ......................................................................... *passim*

29 U.S.C. §1132(g)(1) .................................................................................................................1, 7

**Other Authorities**

Fed. R. Civ. P. Rule 23 ....................................................................................................................7

Fed. R. Civ. P. Rule 54(d)(2) ..........................................................................................................1

## PRELIMINARY STATEMENT

Pursuant to Rule 54(d)(2), Fed. R. Civ. Pr., and this Court's Order of April 12, 2018, (Docket Number 17), Plaintiffs Magdalene Wheeler, Richard Fields, and Donald Kearns, Sr. ("NY Subclass Representatives"), and Joyce Dull, Thomas Lawson, and Jeffrey Taylor ("Virginia Subclass Representatives") (collectively, "Class Representatives") and the proposed subclass members (collectively, "Class Members"), by their attorneys, Cohen, Weiss and Simon L.L.P. ("CWS"), submit this Memorandum of Law in support of their application for reasonable attorneys' fees and costs under Section 502(g)(1), 29 U.S.C. §1132(g)(1), of the Employee Retirement Income Security Act ("ERISA"). The Class Settlement Agreement, which has been preliminarily approved by this Court, provides for the payment of modest attorneys' fees and costs not to exceed $60,000 to be paid by Defendant Edgewell Personal Care, LLC ("Edgewell") over and above the settlement proceeds to the Class Members. The IUE-CWA has assumed the burden of paying Plaintiffs' legal fees in this matter, and the attorneys' fees and costs recovered from Edgewell pursuant to the Class Settlement Agreement, (Docket Number 14-1), will be used to compensate the IUE-CWA for the expenses that it incurred in funding this litigation. Plaintiffs are seeking $60,000 in fees and costs in this application.

For the reasons discussed below, the requested amount of $60,000 is reasonable in light of the time expended in this matter, the excellent result obtained for the Class Members, and the fact that the fee is being paid directly by the Defendant and not being subtracted from the settlement proceeds. Importantly, the requested fee amounts to just over three percent of the size of the aggregate settlement amount. It is also only a portion of the total legal fees and costs in this action of $122,840.11, as explained below. The total accrued attorneys' fees are $122,082.00 for 361.5 hours of work performed by partners, associates, and the firm's paralegal. (Declaration of Thomas M. Kennedy, dated July 23, 2018 ("Kennedy Decl."), ¶ 33, Ex. A.)

1

**STATEMENT OF FACTS**

Plaintiff Magdalene Wheeler's late husband, Walter Wheeler, Plaintiff Richard Fields, and Plaintiff Donald Kearns, Sr. were employed at the Playtex Products, LLC f/k/a Playtex Products, Inc. ("Playtex") factory in Watervliet, New York and were members of the Brush Workers Union, IUE-CWA, AFL-CIO, and IUE-CWA.  (Compl., Dkt. No. 1, ¶ 9.)  Playtex was a predecessor company to Defendant Edgewell.  (*Id.*, ¶ 3.)  Wheeler, Fields, and Kearns are participants in Playtex's retiree life insurance plan, Energizer Holdings, Inc. Group Life Insurance for Disabled and Retired Employees ("Playtex Retiree Plan").  (*Id.*, ¶ 9.)  The employees who worked at the Watervliet Factory were covered under a series of collective bargaining agreements ("CBAs") between Edgewell and its predecessor company, Playtex.  (*Id.*, ¶¶ 3, 17.)

Plaintiff Joyce Dull's late husband, Harry Dull, Plaintiff Thomas Lawson, and Plaintiff Jeffrey Taylor were employed at the American Safety Razor Company, LLC ("ASR") factory in Verona, Virginia and were members of Local 173.  (*Id.*, ¶¶ 13-16.)  ASR was also a predecessor company to Edgewell.  (*Id.*, ¶ 3.)  Dull, Lawson, and Taylor are participants in the American Safety Razor Company Group Insurance Plan For Hourly Employees (the "ASR Retiree Plan").  (*Id.*, ¶ 13.)  The Local 173 employees who worked at the Verona Factory were covered under a series of CBAs between Edgewell and its predecessor company, ASR.  (*Id.*, ¶¶ 3, 17.)

Defendant Edgewell was formerly known as Energizer Personal Care, LLC, a division of Energizer Holdings, Inc. ("Energizer").  (*Id.*, ¶ 1, n.1.)  In 2015, Energizer became Edgewell, spinning off Energizer's battery business into a company of its own.  (*Id.*)  Playtex and ASR were acquired by Energizer in 2007 and 2010, respectively.  (*Id.*)  As a result of the 2015 split, Edgewell became the parent company of Playtex and ASR.  (*Id.*)  Edgewell succeeded to the contractual obligations that Playtex and ASR had to the participants in the Playtex Retiree Plan

2

and the ASR Retiree Plan. (*Id.*, ¶¶ 19, 22.)  Edgewell is the plan administrator, plan sponsor, and fiduciary of the Playtex Retiree Plan and the ASR Retiree Plan. (*Id.*, ¶¶ 19, 21-22.)

The Class Action Complaint ("Complaint") in this case was filed on May 19, 2017 seeking class-wide relief under ERISA to recover life insurance benefits due and to clarify and enforce rights under employee welfare benefit plans for retirees in two subclasses (the "Class Members").  Plaintiffs contended that the CBAs relevant to this action provided for lifetime life insurance benefits for retirees and their dependents.  Plaintiffs also contended that these benefits were not subject to later termination by the plan sponsor.  Defendant Edgewell contended that the plan sponsor retained the right to modify or terminate the life insurance benefits at any time.

As was anticipated at the time of the Complaint (and noted in paragraph 7 of the Complaint), the parties engaged in settlement discussions to resolve the matter.  The Class Settlement Agreement was finalized by the Plaintiffs and Defendant on December 13, 2017. (Dkt. No. 14-1.)  The parties moved jointly for certification of the class and for preliminary approval of the class action settlement agreement in January 2018 on the basis that it was fair and reasonable and it provided immediate and substantial financial recovery without the attendant risk of the Class Members receiving no recovery due to the termination of their benefits or incurring further delay.  (Dkt. No. 14 at 16-21.)  On April 12, 2018, the Court issued an Order preliminarily approving the class action settlement and directing notice to the class. (Dkt. No. 17.)  The Order provided that an award of attorneys' fees and costs be filed no later than ten (10) days prior to the Final Approval Hearing, to be held on July 31, 2018.  (*Id.* at 3, 5.)

The terms of the Class Settlement Agreement, if approved by the Court, are as follows: 1) all Class Members living at the time of the Effective Date[1] who submit a valid claim will receive a lump sum payment approximately equal to the net present value of the life insurance benefit to which their beneficiaries would be entitled based on the applicable CBA at the time of the Class Member's retirement; and 2) beneficiaries of those Class Members who died after December 31, 2013 and before the Effective Date of the Class Settlement Agreement will receive the full amount to which the Class Members were entitled under the applicable CBA in lieu of the present value amount set forth above, provided they submit a timely and valid claim that establishes their entitlement to the benefit. (Dkt. No. 14-1 at 2-3.) Generally speaking, lump-sum payments to living Virginia Subclass members are expected to range from approximately $1,025 to $6,500, and payments to the New York Subclass members, from approximately $1,500 to $6,025. (Kennedy Decl., ¶ 18.) The total anticipated payout to the Virginia Subclass is expected to be approximately $1,547,000, as compared with a total face value of the insurance policies of approximately $3,890,000. (*Id.*) The total anticipated payout to the New York Subclass is expected to be approximately $263,000, as compared to a total value of approximately $400,000. (*Id.*) On average, this amounts to more than forty percent of the total possible recovery.

The Class Settlement Agreement also provides for the modest payment of attorneys' fees and costs to CWS not to exceed $60,000, which is not being taken from the settlement proceeds due to Class Members but is instead to be paid by Edgewell. (Dkt. No. 14-1 at 3.)

---

[1] The Effective Date is the later of either 1) the expiration of the time for filing an appeal from the Court's entry of a final judgment order or 2) if a timely appeal is made, the date of the final resolution of that appeal and subsequent appeals resulting in judicial approval of this Class Settlement Agreement. (Dkt. No. 14-1 at 6.)

In the course of representing Plaintiffs and Class Members in this action, Thomas Kennedy, of the firm of Kennedy, Jennik and Murray, P.C. ("KJM"), which merged with CWS in January 2018, conducted a significant investigation of the claims at issue and obtained a familiarity with the factual and legal issues presented in this case. (Kennedy Decl., ¶ 13.) Mr. Kennedy extensively reviewed the multiple CBAs that provide retirees in the New York and Virginia Subclasses with continued life insurance benefits during their retirements. (*Id.*, ¶ 14.) Mr. Kennedy also spoke to Class Members and Plaintiffs, Class Representatives, regarding their benefits and analyzed documents relevant to the purchase of Playtex and ASR by subsequent owners including Edgewell. (*Id.*) Mr. Kennedy then engaged in a lengthy period of negotiations with the counsel for Defendant about a potential settlement of these claims. (*Id.*, ¶ 15.) The parties exchanged relevant information about the Class Members including present value calculations of the life insurance benefits that Plaintiffs asserted were due to Class Members for their lifetime. (*Id.*)

Mr. Kennedy was assisted in this work by his partner, Susan Jennik, and associates Serge Ambroise, Sumanth Bollepalli, and Cristina Gallo. Leah Thompson, in her capacity as paralegal, worked on this matter throughout the pendency of the litigation. (*Id.*, ¶ 14.)

KJM, and its successor CWS, represents labor unions and their benefit funds and regularly litigated ERISA matters on behalf of funds, unions, and individuals in federal court at both the trial and appellate levels. (*Id.*, ¶ 2.) Mr. Kennedy, a graduate of New York University School of Law, has over forty years of experience as an attorney representing unions and funds. (*Id.*) With Mr. Kennedy serving as lead counsel, KJM has handled many large ERISA litigations on behalf of funds and individual beneficiaries across the country. (*Id.*, ¶¶ 3-4.) Some recent examples include a putative class action on behalf of a class of 95,000 against General Electric

Company for termination of retiree healthcare benefits, *IUE-CWA, et al. v. General Electric Company*, 15-CV-2301 (BYP) (N.D. Ohio), now on appeal at the Sixth Circuit, cv-17-3885, *Moore, et al. v. Navillus Tile, Inc., et al.*, No. 14-8326 (S.D.N.Y. 2017), and *Moore, et al. v. River Avenue Contracting Corp., et al.*, No. 13-CV-4205 (JSR)(AJP) (S.D.N.Y.).  (Kennedy Decl., ¶¶ 3-4.)

Ms. Jennik has thirty-seven years of experience as an attorney representing unions and funds.  She is a 1981 graduate of New York University School of Law.  (*Id.*, ¶ 24.)  Mr. Ambroise, a 2005 graduate of Cornell School of Law, represented unions and funds for approximately six years during his tenure at KJM.  (*Id.*, ¶ 25.)  Mr. Bollepalli has worked exclusively in the area of labor and employee benefits since his graduation from law school.  (*Id.*, ¶ 26.)  Ms. Gallo has been engaged exclusively in the practice of labor and employment since her graduation from UCLA School of Law in 2010 and has been employed by KJM since December 2015, and by CWS since January of 2018.  (*Id.*, ¶ 27.)  Ms. Thompson was a paralegal for KJM and then CWS for approximately five years and worked on several complex cases during her tenure.  (*Id.*, ¶ 28.)

## <u>ARGUMENT</u>

### I.   PLAINTIFFS ARE ENTITLED TO THE AWARD OF ATTORNEYS' FEES AND COSTS IN THE AMOUNT OF $60,000

Plaintiffs are entitled to the award of the attorneys' fees and costs expended.  The amount expended totals $122,840.11, but has been reduced to $60,000, the cap negotiated between the parties and memorialized in the Class Settlement Agreement.  The requested amount of $60,000 represents just over three percent of the aggregate settlement amount of approximately $1.8 million.  (Kennedy Decl., ¶ 18.)  Moreover, this amount will be paid by Defendant and will not be deducted from the amounts recoverable by Class Members.

A.     The *Goldberger* Factors Support the Award of Fees

In an ERISA class action by participants or beneficiaries to recover benefits due and to enforce the terms of a plan, the Court may award reasonable attorneys' fees and costs.  29 U.S.C. § 1132(g)(1); *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 47 (2d Cir. 2000) (delineating factors to be analyzed when attorneys' fees are sought from a common fund recovery); *see also* Fed. R. Civ. P. 23 ("In a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement.").  In the Second Circuit, "Awarding attorneys' fees on a percentage basis is favored in class actions."  *Siddiky v. Union Square Hosp. Grp., LLC*, No. 15 CIV. 9705 (JCF), 2017 WL 2198158, at *8 (S.D.N.Y. May 17, 2017); *Raniere v. Citigroup Inc.*, 310 F.R.D. 211, 220 (S.D.N.Y. 2015) ("percentage method . . . provides a powerful incentive for the efficient prosecution and early resolution of litigation") (citation omitted).  The percentage method considers the time and labor expended by counsel, the magnitude and complexity of the litigation, the risk of litigation, the quality of representation, the requested fee in relation to the settlement, and public policy considerations.  *Goldberger*, 209 F.3d at 50 (citation and internal quotation marks omitted).  As discussed below, these factors strongly favor the award of $60,000 in attorneys' fees in this litigation, particularly since such fees will be paid by Edgewell and will not be subtracted from Class Members' recovery.

1.     Time and Labor Expended by Counsel.

Counsel have expended significant time and labor in this litigation, including approximately 275 hours worked by attorneys and more than 80 paralegal hours.  It is true that settlement came early in this matter.  *See Raniere*, 310 F.R.D. at 221.  However, counsel have been investigating the claims at issue, managing communication with hundreds of class

members, many of whom are elderly, and engaging in extensive motion practice with Defendant Edgewell regarding employee benefits for retirees in New York, Virginia, and Ohio since 2014. It is the investigation of the retirees' claims in the Ohio Action – and the ensuing negotiation with Defendant's counsel – that facilitated the prompt resolution of the instant matter.  (Compl., Dkt. No. 1, ¶ 7.)  *Siddiky*, 2017 WL 2198158, at *9 ("counsel have undoubtedly devoted substantial effort to organizing the class action, taking targeted discovery, and engineering a favorable settlement") (citation omitted).  In fact, counsel has negotiated a settlement for Plaintiffs and proposed Class Members in this litigation that represents an overall average recovery of approximately 40% of the best possible recovery.  As such this *Goldberger* factor weighs heavily in favor of approval of this application.

### 2.      Magnitude and Complexity of the Litigation.

This ERISA class action litigation involved subclasses of retirees whose employment was subject to multiple collective bargaining agreements in different locations involving a succession of different employers.  *See In re Eastman Kodak Erisa Litig.*, 213 F. Supp. 3d 503, 507 (W.D.N.Y. 2016) ("ERISA class actions are complex by nature.").  Analysis of the damages at issue involved actuarial calculations of the present value of the benefits.  Further, the New York and Virginia subclasses included approximately 480 individuals.  *See Siddiky*, 2017 WL 2198158, at *11 (wage and hour class of about 220 people in several job titles was "moderately large and complex").  Given these facts, the award of fees is justified by the magnitude and complexity of this matter.

### 3.      The Risk of the Litigation.

Despite Plaintiffs' position that they are entitled to their life insurance benefits in full, litigation presents significant risks and there would be considerable uncertainty regarding the outcome.  *See Siddiky*, 2017 WL 2198158, at *11; *see also Massiah v. MetroPlus Health Plan,*

8

*Inc.*, No. 11-CV-05669 BMC, 2012 WL 5874655, at *4 (E.D.N.Y. Nov. 20, 2012) ("Litigation inherently involves risks.") (citation and internal quotation marks omitted).  This is especially true given that the law governing vested employee benefits has been heavily litigated in recent years and is in flux.  *See, e.g.*, *Int'l Union, United Auto, Aerospace and Agricultural Workers of Am. v. Kelsey-Hayes Co.*, 872 F.3d 388, 390 (6th Cir. 2017) (Griffin, J., dissenting from denial of rehearing *en banc*) (noting unsettled nature of the law); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 147 (S.D.N.Y. 2010) ("ERISA law is still developing").  Further, there is the risk of maintaining a class action through trial.  *See Siddiky*, 2017 WL 2198158, at *11.  Again, this factor favors approval of the fee request.

### 4.    <u>The Quality of Representation.</u>

As delineated in the Kennedy Declaration, the attorneys of KJM and now CWS (collectively, the "Firms"), have expertise in the field of ERISA and employee benefits.  Thomas Kennedy and Susan Jennik have decades of experience in the area, and KJM handled multiple, high-profile benefits cases in which millions has been recovered for class members.  As set forth above, counsel obtained a highly favorable result for Class Members, a result which bespeaks the quality of the representation provided by class counsel.  *See Taft v. Ackermans*, No. 02 Civ. 7951, 2007 WL 414493, at *10 (S.D.N.Y. Jan. 31, 2007) ("To determine the quality of representation, courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit.") (citation and internal quotation marks omitted).  These results should be measured against the muscle of their adversary, Bryan Cave Leighton Paisner, a global firm with expertise in employee benefits.  *See In Re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004) ("'[T]he quality of opposing counsel is also important in evaluating the quality of plaintiffs' counsels' work.'") (quoting *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 749 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986)).  In light of the

9

foregoing, this factor also favors approval of the request.  *See, e.g.*, *Siddiky*, 2017 WL 2198158, at *11 ("highly experienced" counsel "engineered a settlement quite favorable to the class" and therefore approval of request was warranted); *Raniere*, 310 F.R.D. at 221 (same).

5.      **The Requested Fee in Relation to the Settlement.**

As discussed above, the requested and already reduced fee of $60,000 constitutes just over <u>three percent</u> of the total settlement amount of $1,800,000.  A percentage of this small amount cannot constitute the "windfall" that courts seek to avoid when scrutinizing fee awards. *Siddiky*, 2017 WL 2198158, at *11 (citing *Asare v. Change Group New York, Inc.*, No. 12-CV-3371 (CM), 2013 WL 6144764, at *21 (S.D.N.Y. Nov. 15, 2013).  In fact, "'[c]ourts in this Circuit have routinely granted requests of approximately one-quarter to one-third'" of the settlement amount.  *Siddiky*, 2017 WL 2198158, at *11 (quoting *Asare*, 2013 WL 6144764, at *21); *see, e.g.*, *In re Eastman Kodak Erisa Litig.*, 213 F. Supp. 3d 503, 508 (W.D.N.Y. 2016) (awarding 25% of the common fund) (collecting cases).  Further, unlike these cited matters, Edgewell will be paying the fee directly and it will not offset Class Members' recovery under the terms of the Class Settlement Agreement.  Given these facts, this factor overwhelmingly supports Plaintiffs' application for the requested fees.

6.      **Public Policy Considerations.**

Public policy considerations support this fee award.  ERISA was enacted "to promote the important goals of protecting and preserving the retirement savings of American workers," and the statute "specifically encourages private enforcement."  *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 149-50 (S.D.N.Y. 2010) (citing 29 U.S.C. § 1132(a)).  In the absence of the Firms' actions, hundreds of elderly, working-class retirees would have had their benefits unilaterally terminated by their former employers with no recourse or recompense.  *Marsh*, 265 F.R.D. at 150. Accordingly, public policy interests favor the award of fees in this litigation.

10

**B.     The Hourly Rates Sought are Reasonable.**

Plaintiffs are seeking reasonable hourly rates for the services of the Firms' attorneys in this litigation.  The contemporaneous billing records provided show that the services rendered were warranted and reasonable and that the Firms' made efficient use of paralegal time in lieu or more costly attorney hours.  Here, Plaintiffs seek $60,000 in attorneys' fees for 361.5 hours of work at the hourly rates of $600 for Mr. Kennedy and Ms. Jennik; $350 for Mr. Ambroise, Mr. Bollepalli, and Ms. Gallo; and $110 for Ms. Thompson.

The Second Circuit has instructed that in "exercising its considerable discretion" to determine reasonable hourly rates, the district court should "bear in mind all of the case-specific variables that we and other courts have identified as relevant to the reasonableness" of fees. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 190 (2d Cir. 2008).  In *Arbor Hill*, the Second Circuit urged the consideration of the factors enumerated by the Fifth Circuit in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 92-93 (1989)).[2]  *Arbor Hill*,

---

[2] The twelve *Johnson* factors are as follows:

> 1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Arbor Hill*, 522 F.3d at 186 n.3 (citing *Johnson*, 488 F.2d at 717-19).

522 F.3d at 190.  The appellate court further explained that "[t]he reasonable hourly rate is the rate a paying client would be willing to pay."  *Id.*

A "reasonable hourly rate" should be commensurate with "'the current prevailing market rate for lawyers in the district in which the ruling court sits,'" *see Demonchaux v. Unitedhealthcare Oxford*, No. 10-CV-4491 (DAB), 2014 WL 1273772, at *7 (S.D.N.Y. Mar. 27, 2014) (quoting *Export Development Canada v. Bonilla*, No. 13-CV-4952 (KBF), 2014 WL 713470, at *4 (S.D.N.Y. Feb. 19, 2014)) (internal quotation marks omitted), for "similar services by lawyers of reasonably comparable skill, experience, and reputation."  *Demonchaux*, 2014 WL 1273772, at *6 (internal quotation marks and citation omitted.  The court may take "judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district."  *Farbotko v. Clinton Cty.*, 433 F.3d 204, 209 (2d Cir. 2005) (citation omitted).  Finally, the court should also award "'[c]urrent rates, rather than historical rates . . . in order to compensate for the delay in payment.'"  *Bldg. Serv. 32BJ Health Fund v. Hughes Contracting Indus. Ltd.*, No. 14-CV-09581 (SN), 2017 WL 2169302, at *2 (S.D.N.Y. May 17, 2017) (quoting *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998)).

### 1.    <u>Partners Thomas M. Kennedy and Susan M. Jennik</u>

Plaintiffs seek $600 per hour for the services Mr. Kennedy and Ms. Jennik provided in this case.  As discussed *supra*, the practices of Mr. Kennedy and Ms. Jennik are devoted solely to labor and benefit fund matters, and they have decades of experience in the area.  The hourly rates sought herein for the two partners are commensurate with the rates awarded by Southern District courts to experienced litigators in cases involving complex or contentious ERISA and employment claims.  *See Arbor Hill*, 522 F.3d at 186 n.3 (in determining the reasonable hourly rate, the court is to consider awards in similar cases) (citing *Johnson*, 488 F.2d at 717-19).

For example, the Southern District recently awarded rates of $665 and $605 for two

partners in an ERISA case involving a "complicated set of legal and factual issues concerning investment management, investment strategy and the appropriate scope of fiduciary duties owed by investment professionals." *Severstal Wheeling, Inc. v. WPN Corp.*, No. 10-CV-954 (LTS)(GWG), 2016 WL 1611501, at *4 (S.D.N.Y. Apr. 21, 2016). Given the nature of the issues at stake, this Court found that that case "more suitably falls within the general category of complex commercial litigation," which commands relatively higher rates. *Id.* (citation omitted). As discussed above, ERISA litigation is complex and evolving, and this matter involved hundreds of individuals, numerous CBAs, and a succession of employers. Further, Plaintiffs note that, unlike Mr. Kennedy and Ms. Jennik, the partners in *Severstal Wheeling* had only fourteen and twelve years of experience, respectively. *Id.* at *3.

In two recent ERISA cases brought by individual plaintiffs, the Southern District awarded a partner with thirty years of experience – twenty of which were obtained in the field of ERISA – a fee of $600 per hour. *Doe v. Unum Life Ins. Co. of Am.*, No. 12-CV-9327 (LAK)(AJP), 2016 WL 335867, at *5 (S.D.N.Y. Jan. 28, 2016); *see also Demonchaux*, 2014 WL 1273772, at *7 (approving $600 per hour rate for a second out-of-district partner) (collecting cases). In *Doe*, this Court cited, *inter alia*, the attorney's resume, which included "several cutting-edge ERISA cases to the Second Circuit, serving as leading counsel in a 968-member ERISA class action" in this district, co-authoring an amicus brief to the United States Supreme Court, as well as ERISA publication and lecturing experience as grounds for the award of the $600 rate. *Doe*, 2016 WL 335867, at *5. In *Demonchaux*, this Court had little difficulty concluding that $600 rates for two partners were "in line with the prevailing rates in this district for similar services by lawyers and staff of reasonably comparable skill, experience, and reputation." *Id.*, 2014 WL 1273772, at *6 (citation and internal quotation marks omitted); *see*

13

*also Asare*, 2013 WL 6144764, at *19 (rates of $750 in Fair Labor Standards Act case were "reasonable based on the rates regularly charged for attorney and staff time within this district") (citation omitted).

As the foregoing demonstrates, the hourly rates sought herein are well within the range that courts in this district have approved for attorneys of comparable skill and experience to those of KJM's partners, who have handled many large, cutting-edge ERISA and employee benefits cases at both the trial and appellate court levels, on behalf of multiple plaintiffs.  *See Arbor Hill*, 522 F.3d at 186 n.3 (in determining reasonable hourly rate, court may consider the "experience, reputation, and ability of the attorneys) (citing *Johnson*, 488 F.2d at 717-19); *see, e.g.*, *Doe*, 2016 U.S. Dist. LEXIS 10706, at *5-6.  As discussed *supra*, Mr. Kennedy and Ms. Jennik each have decades of experience.  *See Rozell v. Ross-Holst*, 576 F. Supp. 2d 527, 545 (S.D.N.Y. 2008) (citing experience of counsel); *Powell v. Metro One Loss Prevention Servs. Grp. (Guard Div. NY)*, No. 12-CV-4221 (LAP)(DF), 2015 WL 9287121, at *3 (S.D.N.Y. Feb. 5, 2015), *report and recommendation adopted by* 2015 WL 9255338 (S.D.N.Y. Dec. 17, 2015) (awarding $650 per hour for partner with thirty-five years of experience in employment discrimination matter).  Like the partner in *Doe*, Mr. Kennedy and Ms. Jennik have been involved in many large, precedential ERISA matters, and Mr. Kennedy has lectured in the area. (Kennedy Decl., ¶¶ 2-5.)  *See Arbor Hill*, 522 F.3d at 186 n.3 (court may consider the "level of skill required to perform the legal service properly") (citing *Johnson*, 488 F.2d at 717-19).

As discussed above, the results obtained in this litigation reflect their expertise.  *See Arbor Hill*, 522 F.3d at 186 n.3 (court may consider the "amount involved in the case and the results obtained") (citing *Johnson*, 488 F.2d at 717-19); *see, e.g.*, *Severstal Wheeling*, 2016 WL 1611501, at *4.

Plaintiffs note that the rate of $600 is in excess of the rate paid for the services of Mr. Kennedy and Ms. Jennik in this litigation.  (Kennedy Decl., ¶ 30.)  However, the rate charged to clients is but one of twelve *Arbor Hill* factors to be considered, and although it is "relevant," is it "not dispositive" of what constitutes the reasonable hourly rate and should not be dispositive of the appropriate hourly rate in this geographic area.  *Themis Capital v. Democratic Republic of Congo*, No. 09-CV-1652 (PAE), 2016 WL 817440, at *4 (S.D.N.Y. Feb. 22, 2016) (awarding partners rates of $1,000 and $830, the rates actually paid by clients) (citation omitted).

### 2.    Associates Serge Ambroise, Sumanth Bollepalli, and Cristina Gallo

The hourly rates sought by Plaintiffs for the legal work performed by the Firms' associates Mr. Ambroise, Mr. Bollepalli, and Ms. Gallo are also reasonable.  Plaintiffs seek a rate $350 per hour for all three.

Courts in this District have approved similar rates in complex ERISA and employment litigation.  Just as with its partners, the Firms' associates are experienced in the relevant subject matter.  *See Arbor Hill*, 522 F.3d at 186 n.3 (in determining reasonable hourly rate, court may consider the "experience, reputation, and ability of the attorneys) (citing *Johnson*, 488 F.2d at 717-19); *see, e.g.*, *Doe*, 2016 U.S. Dist. LEXIS 10706, at *5-6.  The Firms' associates *inter alia*, assisted in the drafting of pleadings and motion papers.  *See Arbor Hill*, 522 F.3d at 186 n.3 (court may consider the "time and labor required") (citing *Johnson*, 488 F.2d at 717-19).

 The requested rate of $350 per hour is justified here.  Courts in this district regularly award $300 per hour for associates in straightforward ERISA default matters.  *See, e.g.*, *N.Y.C. Dist. Council of Carpenters v. Rock-It Contr., Inc.*, No. 09-CV-9479 (JGK)(AJP), 2010 WL 1140720, at *4 (S.D.N.Y. Mar. 26, 2010), *adopted by* 2010 WL 1558568 (S.D.N.Y. Apr. 16, 2010) (awarding $300.00 hourly rate for associate in ERISA default) (citations omitted); *N.Y.C. Dist. Council of Carpenters Pension Fund v. Quantum Constr.*, No. 06-CV-13150 (GEL)(JCF),

2008 WL 5159777, at *13 (S.D.N.Y. Dec. 9, 2008) ($300.00 hourly rate for associate) ("rates requested are commensurate with those generally charged for similar work in this district").  This case was not straightforward for the reasons set forth above, and it was contested by Defendant. As a result, an increase to a rate of $350 per hour is warranted.  Moreover, the work of the associates was integral to the filing of the pleadings and motion papers in this matter.  *See Arbor Hill*, 522 F.3d at 186 n.3 (citing *Johnson*, 488 F.2d at 717-19) (court may consider the "time and labor required").[3]

### 3.   Paralegal Leah Thompson

Plaintiffs seek $110 per hour for the services of paralegal Leah Thompson, who worked with the Firms for approximately four years.  This hourly rate for paralegal work is far below what has been considered reasonable by courts in the Southern District for the better part of a decade.  *See, e.g.*, *Therapy Prods., Inc. v. Bissoon*, No. 07-CV-8696 (DLC)(THK), 2010 WL 2404317, at *5 (S.D.N.Y. Mar. 31, 2010) (awarding paralegal billing rates ranging from $170 to $200); *Diplomatic Man, Inc. v. Nike, Inc.*, No. 08-CV-139 (GEL), 2009 WL 935674 , at *6 (S.D.N.Y. Apr. 7, 2009) ($200 per hour paralegal in a New York firm is "perfectly reasonable").

This litigation involved a significant number of Class Members, and Ms. Thompson managed communication with this universe of individuals over the course of several years. (Kennedy Decl., Ex. B.)  Ms. Thompson was appropriately utilized to perform this work and this utilization defrayed the use of valuable – and more costly – attorney time.  *See U.S. Football League v. Nat'l Football League*, 887 F.2d 408, 416 (2d Cir. 1989) (paralegals provide "cost-effective delivery of legal services") (citation and internal quotation marks omitted).

---

[3] Although the rates charged to the IUE-CWA for the services of the associates were lower than $350 per hour, this is not dispositive under *Arbor Hill* for the reasons set forth at page 15, *supra.*

Accordingly, the requested rate of $110 for Ms. Thompson's time in this case is reasonable.

     **C.**    **The Hours of Legal Work Performed in this Matter are Reasonable.**

The total hours of legal work performed in this action are eminently reasonable. *See New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147-48 (2d Cir. 1983) (fee applicant bears the burden of demonstrating the hours expended and the nature of the work performed through contemporaneous time records that describe with specificity the nature of the work done by each attorney, the hours expended, and the dates). The contemporaneous time records in Exhibit B of the Kennedy Declaration sufficiently document the 361.5 hours expended by each of the Firms' partners, associates, and its paralegal in this litigation. These records show the dates, the hourly rate, the number of hours spent, and a description of the work performed. *See Carey*, 711 F.2d at 1148. The records sufficiently detail the nature of the work performed, *see Trustees of the New York City District Council of Carpenters Pension Fund v. Onyx Glass & Metal Corp.*, No. 14-CV-7333 (PAE), 2015 WL 5144120, at *7 (S.D.N.Y. Sep. 1, 2015) ("detailed invoices" reflect "sound billing practices"), and the accounting of hours worked was tracked in six-minute increments, as is the practice in this district, *see Hughes Contracting Industries*, 2017 WL 2169302, at *3. As a result, an award of $60,000 for the 361.5 hours expended in this litigation is reasonable.

     **D.**    **Plaintiffs Are Entitled to the Award of $768.11 in Costs.**

As discussed above, multiplying the hours expended on legal work at the rates requested yields a sum that exceeds the $60,000 cap for attorneys' fees and costs that was negotiated in the Class Settlement Agreement. As a result, consideration of the costs incurred in the prosecution of this litigation may be unnecessary. However, to the extent such costs are considered, their award is warranted. *See King v. JCS Enterprises, Inc.*, 325 F. Supp. 2d 162, 171 (E.D.N.Y. 2004) ("Courts in the Second Circuit . . . generally award as costs 'those reasonable out-of-

17

pocket expenses incurred by the attorney and which are normally charged fee paying clients.'") (quoting *DeVito v. Hempstead China Shop, Inc.*, 831 F. Supp. 1037, 1045 (E.D.N.Y. 1993)) (citation and internal quotation marks omitted).

Plaintiffs seek reimbursement of litigation costs, which total of $768.11, as set forth in the chart annexed as Exhibit C to the Kennedy Declaration.  Plaintiffs' costs consist of only the Complaint's filing fee and mailing expenses.  These costs are of the type "which are normally charged fee paying clients," and have been charged to and paid by the IUE-CWA during the pendency of this litigation, which supports their recovery in this matter.  (Kennedy Decl., ¶ 37.) *King*, 325 F. Supp. 2d at 171 (citations and internal quotation marks omitted).

## CONCLUSION

For the reasons set forth above, Plaintiffs' application for fees and costs should be granted in its entirety.

Dated: New York, New York
      July 23, 2018                     Respectfully submitted,

                                    COHEN, WEISS AND SIMON, L.L.P.

                                    By:           /s/          
                                        Thomas M. Kennedy
                                        Cristina E. Gallo
                                        900 Third Avenue, 21st Floor
                                        New York, New York 10022
                                        (212) 563-4100 Telephone
                                        (212) 563-6527 Fax

                                      *Attorneys for Class Representatives and IUE-CWA*

18