COHEN, WEISS AND SIMON, L.L.P.
*Attorneys for Class Representatives and IUE-CWA*
900 Third Avenue, 21st Floor
New York, New York 10022
Tel. (212) 563-4100

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MAGDALENE WHEELER, RICHARD FIELDS, DONALD KEARNS, SR., JOYCE DULL, THOMAS LAWSON, and JEFFREY TAYLOR, on Their Own Behalf and on Behalf of All Other Similarly Situated Persons, and IUE-CWA, AFL-CIO, and LOCAL 82173, IUE-CWA, AFL-CIO, <br><br>                                            Plaintiffs, <br><br>                    v. <br><br> EDGEWELL PERSONAL CARE, LLC, f/k/a Energizer Personal Care, LLC, formerly a Division of Energizer Holdings, Inc., as Plan Sponsor and Administrator of the Energizer Holdings, Inc. Group Life Insurance for Disabled and Retired Employees and the American Safety Razor Company Group Insurance Plan for Hourly Employees and as Parent to Playtex Products, LLC and as Successor to American Safety Razor Company, LLC, <br><br>                                            Defendants. | **Case No. 17-cv-03789 (GBD)** |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR UNOPPOSED
MOTION FOR FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT**

## INTRODUCTION

Plaintiffs Magdalene Wheeler, Richard Fields, and Donald Kearns, Sr. ("NY Subclass Representatives"), and Joyce Dull, Thomas Lawson, and Jeffrey Taylor ("Virginia Subclass Representatives") (collectively, "Class Representatives"), on their own behalf and on behalf of all other similarly situated persons ("Class Members"), and IUE-CWA, AFL-CIO, and Local 82173, IUE-CWA, AFL-CIO, filed this class action under Federal Rules of Civil Procedure 23(a) and (b)(2). Plaintiffs move for final approval of the class action settlement agreement reached by the parties (the "Settlement Agreement").[1] Defendants Edgewell Personal Care, LLC ("Edgewell") do not oppose this motion.

The Settlement Agreement should be approved because it is fair and represents an adequate and reasonable compromise of Plaintiffs' and Class Members' claims. It is the result of a full investigation of these claims by experienced counsel and arm's-length negotiations between the parties. The Settlement Agreement's terms provide a meaningful and substantial recovery to the members of the two subclasses who were participants in Defendants' life insurance plans. Virginia Subclass members will receive cash payments that range from $1,025 to $6,500; New York Subclass members will receive cash payments between $1,500 and $6,025. The total anticipated payouts amount to over forty percent of the face value of the insurance policies. Further, Plaintiffs and Class Members will receive this payment immediately and will not run the risk that their benefits are terminated or payment is otherwise delayed due to protracted litigation, the results of which would be uncertain. The parties have provided Plaintiffs and Class Members a lengthy period of time to make claims pursuant to the settlement to ensure the greatest possible rate of participation. Finally, because attorneys' fees and costs are

---

[1] A copy can be found at Docket Number 14-1.

to be paid by Defendants and there is no reduction to the claims paid, Plaintiffs and Class Members will receive a maximal recovery.

## STATEMENT OF FACTS

The Court is respectfully referred to the Statement of Facts contained in Plaintiffs' Memorandum of Law in Support of Unopposed Motion to Certify a Class and Preliminarily Approve Class Action Settlement and the Declaration of Thomas M. Kennedy, dated January 12, 2018, for the facts supporting class certification and for a full explication of the terms of the parties' Settlement Agreement.  (Dkt. Nos. 14, 14-5.)

Following the filing of that motion, on April 12, 2018, the Court issued an Order provisionally certifying two subclasses, preliminarily approving the class action settlement, and directing notice to the class.  (Dkt. No. 17.)  In compliance with Order and as set forth in the Declaration of Kimberly K. Ness with Respect to Administration Activities, Dahl Administration, LLC mailed notice to 479 class members on May 2, 2018.  (Dkt. No. 18, ¶ 6.) As of July 5, 2018, Dahl has received 343 claims.  (*Id.*, ¶ 7.)  On July 27, 2018, the parties notified the Court that they have agreed to extend the claims deadline through October 1, 2018 in recognition that claims continue to be submitted by Class Members and because the prior deadline for payment of class claims fell before any order by this Court approving the settlement and releasing the claims becomes final.  (Dkt. No. 23.)  The parties also agreed to expedite payment to Class Members who filed claims on or before July 27, 2018 and agreed to the payment of any fees to Class Counsel that are approved by this Court pursuant to Plaintiffs' Application for Attorneys' Fees and Costs by September 13, 2018.  (*Id.*)

In a letter dated May 8, 2018, Delories Taylor, a putative member of the Virginia Subclass and participant in the American Safety Razor Company Group Insurance Plan For Hourly Employees (the "ASR Retiree Plan"), filed an objection to the Settlement on the basis

2

that it did not provide a full payout of the life insurance policies to retirees and provided a greater payout to deceased retirees.  (Declaration of Thomas M. Kennedy, dated July 30, 2018, Exhibit 1.)

## THE CLASS SHOULD BE CERTIFIED

Plaintiffs satisfy the prerequisites of Federal Rule of Civil Procedure 23(a), including numerosity, commonality, typicality, and adequacy of representation.  The numerosity requirement is satisfied when a proposed class equals or exceeds 40 members.  *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ("numerosity is presumed at a level of 40 members") (citation omitted).  Here, the almost 500 members of the two subclasses are sufficiently numerous "that joinder of each member is impracticable." *MacNamara v. City of New York*, 275 F.R.D. 125, 137 (S.D.N.Y. 2011).

The commonality and typicality prerequisites are easily satisfied.  "The commonality requirement is met if plaintiffs' grievances share a common question of law or of fact." *Marisol A. v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997) (citations omitted).  Plaintiffs, like all Subclass members, are IUE-CWA-represented retirees (or their dependents) who worked at one of two factories, are participants in one of two benefit plans, and claim that they were entitled to continued life insurance benefits under the collective bargaining agreements applicable to them when they retired.  Their benefits were unilaterally terminated by Defendants effective December 31, 2013.  Accordingly, Plaintiffs' claims are typical of those of Subclass members, in that they "arise[] from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992) (citation omitted).  With regards to adequacy, Rule 23(a)(4) requires that Plaintiffs demonstrate, as they have in their motion for fees, that "class counsel is qualified, experienced, and generally able to conduct the litigation." *Marisol A.*, 126 F.3d at 378

3

(internal citations and quotation marks omitted). Rule 23(a)(4) also requires that the interests of Plaintiffs align with those of Subclass members. *Hill v. City of New York*, 136 F. Supp. 3d 304, 356 (E.D.N.Y. 2015). Because the Class Representatives' "claims arise under the same legal theories as will be relied on by the class members, the class members were harmed in the same way, and each class member seeks the same recovery," their representation of the interests of the Class Members is adequate. *Id.*

Plaintiffs also satisfy the requirements of Rule 23(b)(2), which provides for certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole . . . ." Plaintiffs here seek declaratory and injunctive relief seeking reinstatement of their life insurance benefits, and the proposed relief "sweeps broadly enough to benefit each class member." *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 97 (2d Cir. 2015). Plaintiffs also seek relief in connection with any monetary damages incident to, and arising from, Edgewell's decision to terminate life insurance benefits in order to restore Plaintiffs and the proposed Class Members to the positions in which they would have been but for Edgewell's actions. Such monetary relief is sufficiently "incidental" to the equitable relief sought in that its calculation is "'mechanical, formulaic, [and] a task not for a trier of fact but for a computer program.'" *Laurent v. PricewaterhouseCoopers, LLP*, No. 06-CV-2280, 2014 WL 2893303, at *2 (S.D.N.Y. June 26, 2014) (quoting *Johnson v. Meriter Health Servs. Employee Retirement Plan,* 702 F.3d 364, 372 (7th Cir. 2012)). Here, the relief is incidental because it was determined by mathematical formula based on each Class Member's age and the applicable collective bargaining agreement terms, and thus certification under Rule 23(b)(2) is appropriate. (Kennedy Decl., dated January 12, 2018, ¶ 15.) *See Laurent*, 2014 WL 2893303, at *2

(certifying class under (b)(2) in an ERISA matter where calculation of the discounted value of retirement benefits received on a lump sum basis using information in employer's records was a computer task).

## THE SETTLEMENT AGREEMENT SHOULD BE APPROVED

Pursuant to Federal Rule of Civil Procedure 23(e), Plaintiffs hereby respectfully request that this Court approve the Class Action Settlement Agreement and Release ("Class Settlement Agreement"). (Dkt. No. 14-1.) *See Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*, 396 F.3d 96, 117 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context"). The Settlement Agreement is both procedurally and substantively fair and reasonable. With regard to the former, it is the product of arm's-length bargaining between capable counsel following investigation and the exchange of the necessary information. (Kennedy Decl., dated January 12, 2018, ¶¶ 10-11.) *See Wal-Mart Stores*, 396 F.3d at 116 ("[A] presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.") (citation and internal quotation marks omitted). The terms of the Settlement Agreement bespeak the strength of counsel. *See Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 55 (2d Cir. 2000) ("the quality of representation is best measured by results").

The Settlement Agreement is also substantively fair and reasonable under the factors delineated by the Second Circuit in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 454 (2d Cir. 1974), as set forth at length in Plaintiffs' Memorandum of Law in Support of Unopposed Motion to Certify a Class and Preliminarily Approve Class Action Settlement and summarized here. (Dkt No. 14 at 16-21.) Each *Grinnell* factor favors approval of the Settlement Agreement. With regard to the first factor, litigating this case would likely be protracted and expensive, given the size of the class. *See Henry v. Little Mint, Inc.*, No. 12-CV-3996, 2014 WL 2199427, at *7

5

(S.D.N.Y. May 23, 2014) ("class actions are inherently complex" and "settlement avoids costs, delays") (citation and internal quotation marks omitted); *Viafara v. MCIZ Corp.*, No. 12-CV-7452, 2014 WL 1777438, at *6 (S.D.N.Y. May 1, 2014) ("Litigation through trial [of wage and hour class action of class of more than a thousand] would be complex, expensive and long.").

With regard to the third factor, stage of the proceedings and discovery completed, the information exchanged by the parties here without the need for resource-intensive discovery was sufficient to negotiate the settlement and conserve resources to compensate Plaintiffs and Class Members. *See Viafara*, 2014 WL 1777438, at *6 (limited discovery facilitated settlement). The fourth and fifth factors, regarding the risks of establishing liability and damages, also favor approval of the terms of the settlement. *See Quow v. Accurate Mech. Inc.*, No. 1:15-CV-09852 (KHP), 2018 WL 3368673, at *3 (S.D.N.Y. July 10, 2018) (approving settlement). Similarly, the risk of maintaining a class action through trial (*Grinnell* Factor 6) is eliminated through this settlement. *Id.* With regard to the seventh factor, the terms of the Settlement Agreement take into account both Defendants' ability to pay and the provision of adequate compensation to Plaintiffs and Class Members, and Defendants' potential "ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair" or preclude final approval. *Viafara*, 2014 WL 1777438, at *7 (citations and internal quotation marks omitted) (granting final approval). With regard to Factors 8 and 9, the range of reasonableness of the settlement fund in light of the best possible recovery and all attendant risks of litigation, the sums provided for in the Settlement Agreement, which range from a minimum of $1,025 to a maximum of $6,500, are eminently reasonable when considering that they amount to 40% of the total possible recovery in an uncertain climate for litigation concerning collectively-bargained

vested benefits, discussed *infra*. *See Quow*, 2018 WL 3368673 ("substantial" payments of $1,000 to each plaintiff warranted grant of approval).

With regard to the second *Grinnell* factor, the reaction of the Settlement Class has been overwhelmingly positive. Only one objection has been filed in two subclasses with almost 500 members. This fact alone supports approval of the Settlement Agreement. *See Wal-Mart Stores*, 396 F.3d at 118 ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.") (citations and internal quotation marks omitted); *see, e.g.*, *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 619 (S.D.N.Y. 2012) (objection by one in a class of 1,500 "demonstrates strong support for the settlement"); *Wright v. Stern*, 553 F. Supp. 2d 337, 344-45 (S.D.N.Y. 2008) (objection by 13 out of 3,500 class members was "strong indication" of fairness).

The contentions raised by the sole objector do not warrant denying approval of the Settlement Agreement. The objector's concern that she was not receiving the full value of the life insurance benefit is without merit. By its very nature, a settlement generally entails some compromise of the total possible recovery a claimant may be entitled to. *See Grinnell Corp.*, 495 F.2d at 455 n.2 ("satisfactory settlement" may only "amount to a hundredth or even a thousandth part of a single percent of the potential recovery"); *see, e.g.*, *United States v. City of New York*, No. 07-CV-2067 NGG RLM, 2015 WL 1063403, at *18-19 (E.D.N.Y. Mar. 11, 2015) (objection based on fact that settlement amount was less than total potential award was not grounds for rejecting settlement).[2] Her contention must also be weighed against Plaintiffs' likelihood of success at trial. Given the unsettled nature of collectively-bargained employee benefits litigation

---

[2] Plaintiffs further note that in response to Ms. Taylor's concern that she did not know the dollar amount to which she was entitled, she was informed that her recovery would be $2,846.00. (Kennedy Decl., dated July 30, 2018, Exs. 1-2.)

7

following *M&G Polymers v. Tackett*, 135 S. Ct. 926 (2015), were this case to be litigated, a full recovery by Plaintiffs is far from guaranteed. *See Maywalt v. Parker & Parsley Petroleum Co.*, 864 F. Supp. 1422, 1432 (S.D.N.Y. 1994), *aff'd,* 67 F.3d 1072 (2d Cir. 1995) (objections, "when examined with an eye toward success at trial," were outweighed by the "immediate benefits that will inure to the" class from the settlement terms) (compromised claims were unlikely to succeed).

With regard to Ms. Taylor's final contention, it is, in fact, equitable that beneficiaries of deceased Class Members receive the full value of the benefit whereas living Class Members receive a present value amount. Life insurance benefits are paid out upon the death of a participant. Accordingly, the beneficiaries of living Class Members would ordinarily receive a payout at an indeterminate point in future. The terms of the Settlement Agreement provide instead that living Class Members receive the money immediately and gain the utility of that money -- and the opportunity to invest it and earn interest -- months or years earlier than their beneficiaries would otherwise receive it. The deceased Class Members, in contrast, are already entitled to the full value of their policy, and are not receiving the policy proceeds prior to their date of death.

## **CONCLUSION**

For the reasons set forth above, Plaintiffs' Motion for Final Approval of the Settlement Agreement should granted in its entirety.

Dated: New York, New York
      July 30, 2018                    Respectfully submitted,

                                      COHEN, WEISS AND SIMON, L.L.P.

                                      By:         /s/
                                            Thomas M. Kennedy
                                            Cristina E. Gallo
                                            900 Third Avenue, 21st Floor
                                            New York, New York 10022
                                            (212) 563-4100 Telephone
                                            (212) 563-6527 Fax

                                        *Attorneys for Class Representatives and IUE-CWA*